THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT W. HANKS, Defendant-Appellant.

Fourth District   No. 4—87—0610

Opinion filed September 13, 1988.

LUND, J., concurring in part and dissenting in part.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, and Leia M. Norton, of State Appellate Defender's Office, of Chicago, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

A jury found defendant Robert Hanks guilty of two counts of aggravated arson. (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1(a)(3).) The circuit court of Macon County sentenced him to a six-year term of imprisonment. Defendant appeals his conviction and we affirm.

The following questions are presented on appeal: (1) whether the firemen affected by defendant's act were injured to the extent required by the aggravated arson statute; (2) whether defendant was denied a fair trial because a plea-related discussion was introduced into evidence; and (3) whether the conviction on two counts of aggravated arson arising out of a single act may stand.

On March 18, 1987, the State charged defendant with two counts of aggravated arson alleging that on February 10, 1987, he knowingly caused a grain elevator to be destroyed by fire and two fire fighters were injured as a result.

The record reveals defendant was a volunteer fire fighter for the town of Harristown, Illinois. At trial, Craig Rohman testified he and defendant were together from around 8 p.m. February 10, 1987, until 2 a.m. February 11, 1987. Defendant complained to Rohman there had not been enough fire calls lately. Defendant suggested they either burn an abandoned house in town or the grain elevator.

Rohman said he and defendant drove around town for some time before defendant parked his car in a church parking lot across the street from the grain elevator. Rohman testified defendant "said he was going to burn it." Defendant then got out of the car and walked toward the elevator. Defendant was gone about 45 minutes. When he returned, Rohman testified he asked defendant if he did it and defendant laughed and said "[L]ook."

The pair then left the parking lot and drove in the direction of defendant's apartment. According to Rohman, defendant said: "I think we better head on to the fire department because I think we're going to have a fire call." Soon after that statement, defendant's pager sounded and they proceeded to the Harristown fire station. When defendant returned from fighting the fire, Rohman testified he

again asked defendant "if he did it," and defendant "shook his head 'yes,' and he said he did."

Brian Russell and John Snow testified they helped extinguish the elevator fire on February 11, 1987. Russell, a volunteer fire fighter, indicated he was injured at the scene of the fire when he tripped over a hose and landed on his hand. Russell said he had an air mask on until the oxygen ran out. When the wind shifted the fire fighter was overcome by smoke and became ill. Russell testified he coughed profusely and spit mucous. His chest was tight and he could not stand. Russell was administered oxygen for 1½ hours. At the hospital he was treated and released. Although no broken bones in his wrist or hand were reported, Russell missed three days of work because of his injury.

Snow, also a volunteer fire fighter, testified he similarly inhaled smoke when the wind shifted while he was attempting to extinguish the fire. The witness indicated he experienced chest pains, could not breathe and vomited three or four times. Emergency medical technicians gave Snow oxygen on the way to the hospital where he was treated and released. Snow was unable to go to work that morning.

Having denied defendant's motion to exclude a discussion between defendant and a police officer as plea-related, the trial court allowed the police officer, Terry Dawson, to testify as follows:

"Hanks wanted to know what information we had about the case on him. I told him I wasn't at liberty to discuss it with him.

\* \* \*

He then asked me, if he could have a notice to appear that would release him from the county jail.

\* \* \*

Mr. Hanks told me that he would tell me that he did start the fire if I would give him a notice to appear. He also wanted an order of some type stating that we wouldn't release any information to the news media, and that I could fix it that he would keep his job with the—I believe it was the Air National Guard of the military, and he'd still keep his position with the Harristown Fire Department.

\* \* \*

I told him it was out of the question, that as a police officer I couldn't make a deal with him. He then asked, who could make a deal and what he could do to get out of jail. I told him that the prosecutor would be the one he would probably want to talk to. He stated he did want to talk to one of the prosecutors."

A prosecutor spoke with defendant but denied his request for a notice to appear.

Following Dawson's testimony, defendant unsuccessfully moved for a mistrial on the basis the discussion between defendant and Dawson was plea-related and therefore inadmissible under Supreme Court Rule 402(f) (107 Ill. 2d R. 402(f)).

Defendant took the stand and denied the charges against him. In a portion of his testimony relevant to this appeal defendant said he told Officer Dawson he wanted to get out of jail and would have admitted to anything to do so.

The statute under which defendant was convicted provides:

"Aggravated Arson. (a) A person commits aggravated arson when in the course of committing arson he knowingly damages, partially or totally, any building or structure, *** and *** (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion." Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1(a)(3).

Initially, defendant argues he was not found guilty of aggravated arson beyond a reasonable doubt because the State failed to provide evidence the volunteer fire fighters, Russell and Snow, were injured to the extent required by the statute. Defendant maintains the term "injury" contained in section 20—1.1(a)(3) means "personal injury," which is defined as "a hurt or damage done to a man's person, such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or his reputation." (Black's Law Dictionary 707 (5th ed. 1979).) According to defendant, the smoke inhalation both men suffered and the pain in Russell's wrist are not injuries traumatic enough to warrant an aggravated arson conviction. Moreover, the fire fighters could have prevented the harm caused by the smoke inhalation by wearing the protective gear available to them. We disagree.

The dictionary definition of personal injury is not all inclusive. There is no suggestion damage to a man's person which does not involve broken skin or bones also does not constitute injury. In fact, in his reliance on the definition of personal injury in Black's Law Dictionary, defendant ignored that source's reference to worker's compensation acts where the term applies to "any harm or damage to the health of an employee *** which arises in the course of and out of his employment, and incapacitates him in whole or in part." (Black's Law Dictionary 707 (5th ed. 1979).) Certainly the inhalation of noxious smoke can be harmful to health and cause personal injury.

We find defendant's narrow interpretation of injury conflicts with the statute's purpose of elevating the seriousness of the offense of ar-

son when a fire fighter is injured in the line of duty. But for defendant's act of arson, the health of Russell and Snow would not have been harmed or damaged. Their injuries, however slight, were caused by defendant's criminal behavior, the fire defendant started. The possibility the fire fighters could have avoided some of their injuries does not excuse defendant's conduct.

■ This opinion does not attempt to define the term "injury" as it relates to the offense of aggravated arson. We note the term "great bodily harm" has never been defined by the courts. It has been left for the jury to decide whether a victim has suffered such harm to support a conviction of aggravated battery. (*People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.) We are of the opinion the jury has a similar duty when it decides an aggravated arson case. Whether the evidence of injury sustained by a fire fighter while battling an arsonist's fire is sufficient to convict the defendant of aggravated arson is a question of fact for the jury's determination.

■ It is apparent from the fire fighter's testimony the jury heard sufficient evidence to conclude both men suffered injury while in the line of duty. We find the jury's verdict was supported by the evidence.

■ Next, defendant contends certain testimony by Officer Dawson related to the jury an inadmissible plea-related statement made by defendant. He maintains the admission of this testimony violated Supreme Court Rule 402(f) (107 Ill. 2d R. 402(f)) and denied him his right to a fair trial.

Supreme Court Rule 402(f) provides:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (107 Ill. 2d R. 402(f).)

The purpose of this rule is to encourage plea negotiations by eliminating the risk of having the jury hear statements a defendant made while negotiating his plea. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Tennin* (1984), 123 Ill. App. 3d 894, 463 N.E.2d 202.) The test used to detect a plea-related statement is (1) whether the accused exhibited a subjective expectation to negotiate a plea, and (2) whether the expectation was reasonable under the totality of objective circumstances. (*Friedman*, 79 Ill. 2d at 351, 403 N.E.2d at 235.) Such a determination is fact specific.

In *Friedman* the supreme court held the defendant made an inadmissible plea-related statement when he said he wanted to make a

deal and stated generally the bargaining terms. The *Friedman* court held: "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.*, a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Friedman*, 79 Ill. 2d at 353, 403 N.E.2d at 236.

The Second District Appellate Court in *People v. Tennin* (1984), 123 Ill. App. 3d 894, 463 N.E.2d 202, refused to characterize as plea-related the defendant's nonspecific statement that "I want to make a deal." The *Tennin* court held:

> "Defendant here has not made manifest any indication to plead guilty or what the terms are under which he would be willing to bargain. We cannot assume that every statement by a defendant to the effect of 'making a deal' is plea-related. There are other possible explanations underlying a motivation to make a 'deal,' such as a defendant negotiating for his release without a cash bond or on a low bond, or the dropping of charges against him in return for information he might supply. Not all statements made in hopes of some concession are necessarily plea discussions." *Tennin*, 123 Ill. App. 3d at 898, 463 N.E.2d at 205.

■ On the record before us defendant did not demonstrate he subjectively expected to negotiate a plea when he told Officer Dawson he would admit he started the fire in exchange for a notice to appear. The promise to issue a notice to appear is not a tool used by the State in plea negotiations for the reason that, unlike a promise of a lesser sentence, the issuance of such a notice would not affect the ultimate disposition of the case. See *People v. Hardiman* (1980), 85 Ill. App. 3d 347, 350, 406 N.E.2d 842 ("I will cop out in Court if you and the Judge guarantee me parole" held to be a plea-related statement).

The tenor of defendant's statement and his testimony in court that he would have admitted to anything to get out of jail lead us to believe he was motivated to confess only to negotiate a release without bond, and not to negotiate a plea. Accordingly, we find no error in the admission of his statement at trial.

■ Finally, defendant argues he was improperly convicted of two counts of aggravated arson arising out of a single act. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) This argument is without merit when a crime consists of a single act which affects multiple victims. Illinois courts now recognize that multiple crimes may arise out of a single act where separate individuals are victims of that act. (*People v. Mercado* (1983), 119 Ill. App. 3d 461, 456 N.E.2d 331; *People v.*

*Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.) We conclude defendant was properly convicted of two offenses of aggravated arson against two victims resulting from defendant's single act of arson.

We affirm the judgment and conviction imposed by the circuit court of Macon County.

Affirmed.

SPITZ, J., concurs.

JUSTICE LUND, concurring in part and dissenting in part:

I cannot agree with the multiple convictions based on separate firemen being injured. There is no question but that multiple crimes may arise out of a single act where separate individuals are victims of the act. (*People v. Mercado* (1983), 119 Ill. App. 3d 461, 463, 456 N.E.2d 331, 333; *People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082.) In *Mercado,* three reckless homicide convictions were based upon three people being killed as a result of reckless conduct. Mercado was driving under the influence of alcohol. Reckless homicide is not an enhancement of the crime of driving under the influence. The elements of the offenses are different, and no lesser included status exists. Driving under the influence convictions can rest solely on the defendant driving a motor vehicle while under the influence. Reckless homicide requires a reckless operation of the vehicle and a resulting death.

In *Williams,* there was a single conviction for aggravated arson, but there were three homicide convictions because of the death of three people in the fire. There were separate offenses: (1) starting the fire, and (2) the killing of three people.

Arson is included by reference in the aggravated arson provision. Section 20—1.1(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1(a)) provides, in part:

"(a) A person commits aggravated arson when in the course of committing arson *** ."

It, thus, appears that aggravated arson is intended to be an enhancement of the offense of arson. The enhancement can be based on one or more of three happenings:

"(1) [A person] knows or reasonably should know that one or more persons are present therein or (2) any person suffers great bodily harm, or permanent disability or disfigurement as a result of the fire or explosion or (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured

as a result of the fire or explosion." (Ill. Rev. Stat. 1985, ch. 38, pars. 20—1.1(a)(1), (a)(2), (a)(3).)

Proof of any one of the three conditions can result in a Class X sentence. Under section 20—1.1(a)(1) of the Code, injury need not occur, and the wording is both singular and plural. Both subsections 20—1.1(a)(2) and 20—1.1(a)(3) are stated in the singular.

The basic crime of arson relates to the illegal use of fire or explosives. This is in contrast to the crime of homicide, reckless homicide, kidnapping, or aggravated kidnapping, all of which are, by definition, crimes against individuals.

Our supreme court in *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273, discussed multiple convictions but dealt with lesser included offenses carved out of the same act, allowing multiple convictions where there were separate acts, though by nature interrelated. We are concerned whether aggravated arson was intended to enhance arson penalties, or whether it was to create crimes against each person injured. I would find that the legislative intent was to enhance the penalty, not to create separate offenses.

Our courts have held that there can be only one conviction for home invasion, regardless of the number of persons injured. (*People v. Yarbrough* (1987), 156 Ill. App. 3d 643, 646, 509 N.E.2d 747, 749; *People v. Hawkins* (1984), 125 Ill. App. 3d 520, 522-23, 466 N.E.2d 299, 301; *People v. Ammons* (1983), 120 Ill. App. 3d 855, 861, 458 N.E.2d 1031, 1036.) The home invasion statute uses the words "causes any injury to any person or persons" (singular and plural) (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2)), while section 20—1.1(a)(3) of the Code refers to "fireman or policeman who is present" (seemingly a singular connotation) (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1(a)(3)). However, section 20—1.1(a)(1) is plural and can result in the same sentence as an offense alleging the 20—1.1(a)(3) requirements.

Criminal statutes are to be strictly construed (3 N. Singer, Sutherland on Statutes & Statutory Construction §59.03 (Sands 4th ed. 1986)), and this legislation should be construed to provide for only one conviction of aggravated arson regardless of the number of firemen injured or the number of people present in the building ignited.

I concur in all other aspects of the majority opinion.