# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE          )
                                       )

     v.                      )    ID Nos. 2107000514; 2107000202;
                                       )             2106004632; 2106004704

KEITH GIBSON,             )
                                       )

    Defendant.           )

Submitted: March 1, 2024
Decided: March 4, 2024

## ORDER

*Upon Defendant Keith Gibson's Motion to Merge Convictions for Sentencing*
**GRANTED.**

John W. Downs, Esquire, Ipek Kurul, Esquire, and Samuel B. Kenney, Esquire, Deputy Attorneys General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware 19801, Attorneys for the State.

Megan J. Davies, Esquire, LAW OFFICES OF MEGAN J. DAVIES, 716 North Tatnall Street, Wilmington, Delaware 19801; Richard Sparaco, Esquire, LAW OFFICE OF RICHARD SPARACO, LLC, 1920 Fairfax Avenue, Cherry Hill, New Jersey 08003, and P.O. Box 371, Lewes, Delaware 19958, Attorneys for Defendant Keith Gibson.

**WHARTON, J.**

This 4th day of March 2024, upon consideration of Defendant Keith Gibson's ("Gibson") Motion to Merge Convictions for Sentencing, letter from Gibson's attorney, Megan Davies, Esquire submitted February 26, 2024, letter from John Downs, Esquire, Deputy Attorney General submitted March 1, 2024, and the record in this case, it appears to the Court that:

1.     On November 13, 2023, Gibson was found guilty by a jury of 21 charges, including four counts of first degree murder, one count of attempted first degree murder, three counts of robbery first degree, and multiple counts of possession of a firearm during the commission of a felony ("PFDCF"). Those 21 counts stemmed from separate incidents occurring on May 15, 2021, June 5, 2021, June 6, 2021, and June 8, 2021. After the jury returned its verdicts, it was retained to consider an additional four counts of possession of a firearm by a person prohibited ("PFBPP"). The PFBPP charges related to the same incidents. Gibson was found guilty of those charges as well. He is pending sentencing on all 25 counts.

2.     On February 14, 2024, the Court wrote to counsel soliciting their views on whether the PFBPP charges, in particular, and possibly any other charges, merged for sentencing.[1] It directed counsel to confer to determine if there was agreement and to notify the Court if they were able to agree or, of their respective positions it they were unable to agree. On February 26th, defense counsel wrote to the Court

---

[1] D.I. 159 (Docket Items are from ID No. 21060044632A).

informing it that they were unable to agree.[2] Gibson feels merger is appropriate and the State does not. Gibson does not express an opinion about any other charges.[3] In a letter dated March 1st, the State offers its opinion that the PFBPP counts do not merge, nor do any other charges.[4] Relying on *Patrick v. State*,[5] the State contends that the PFBPP statute prohibits separate acts of possession, and each count constituted a separate act. Accordingly, the Court addresses only the PFBPP counts.[6]

3.  Some review of the evidence presented at trial is appropriate. On May 15, 2021 at approximately 5:15 p.m., video surveillance captured a masked suspect robbing a Metro PCS store in Elsmere, Delaware and killing an employee, Leslie Basilio. The suspect was carrying a black revolver in his right hand.

4.  On June 5, 2021, at approximately 5:00 a.m., video surveillance captured a suspect robbing a Dunkin' Donuts in Philadelphia, shooting and killing its manager, Christine Lugo. Video surveillance showed Gibson, without a mask, accosting Lugo as he entered the store carrying a black revolver in his right hand. The projectile recovered from the victim was a ballistic match to the gun recovered during Gibson's arrest.

---

[2] Davies' Letter (Feb, 26, 2023 [sic]).
[3] *Id.*
[4] Downs' Letter (Mar. 1, 2024.)
[5] 2021 WL 4347744 (Del. 2023).
[6] Downs' Letter (Mar. 1, 2024).

5. Also on June 5, 2021, at approximately 11:45 p.m., video surveillance captured a suspect in connection with the robbery and killing of Ronald Wright in Wilmington. No identification could be made. The projectile used in the shooting of Ronald Wright was a .38 caliber class frangible bullet. The three examined bullets indicated eight lands and eight grooves with a right twist.

6. On June 6, 2021, at approximately 10:45 p.m., video surveillance captured the robbery of the Good Deli at Ninth and West Streets in Wilmington and the attempted murder of Belal Almansoori. The suspect shot Almansoori, removed several items from the store, and shot Almansoori again. A projectile used to shoot Almansoori was a .38 caliber class frangible bullet. The examined bullets indicated eight lands and eight grooves with a right twist.

7. On June 8th at 8:20 a.m., the Rite Aid at Fourth and Adams Streets in Wilmington was robbed by two male suspects, one black and one white. A GPS tracking device was included with the money that the black suspect took. The device tracked the suspect to the 800 block of West Fifth Street, a few blocks away from the Rite Aid. Gibson was arrested hiding in the backyard of 812 West Fifth Street. Gibson had an empty gun holster on his person. In his pockets, Gibson had multiple live rounds of .357 ammunition. Police also found a .357 revolver near Gibson's hiding spot. The .357 revolver had live ammunition in the chamber including one .38 caliber class NYCLAD bullet, one .357 caliber frangible bullet, and four .357

caliber lead bullets. The .357 revolver's barrel had eight lands and eight grooves with a right twist.

8. Each PFBPP count alleged that Gibson possessed a handgun "while being a person prohibited from possessing, owning, or controlling a firearm" in violation of 11 *Del. C.* § 1448(e)(2).[7] Although the Indictment did not specify a specific handgun Gibson possessed in the PFBPP counts, it is obvious from the evidence presented and argued by the State at trial that Gibson possessed the same .357 caliber revolver in all four PFBPP counts. The gun was one of several key pieces of evidence that the State contended ballistically linked Gibson to the four incidents in Delaware and the fifth in Philadelphia. Therefore, the issue before the Court is whether Gibson's apparently continuous possession of the .357 revolver from May 15th through June 8th is a single ongoing offense or four separate offenses.

9. That issue implicates the multiplicity doctrine, which is rooted in the Double Jeopardy clauses of the Delaware and United States Constitutions.[8] Those clauses protect defendants against "(i) successive prosecutions; (ii) multiple charges under separate statutes; and (iii) being charged multiple times under the same statute."[9] Multiplicity is the "charging of a single offense in more than one count of

---

[7] Counts I-IV, as amended, in ID Nos. 2106004632B; 2106004704B; 2107000514B; and 2107000202B.
[8] *Patrick,* 2021 WL 4347744, at *4.
[9] *Zugehoer v. State,* 980 A. 2d 1007, 1013 (Del. 2009) (citing *Williams v. State,* 796 A.2d 1281, 1285 (Del. 2002)).

5

the indictment."[10] The multiplicity doctrine prohibits the State from "dividing one crime into multiple counts by splitting it into a series of temporal or spatial units."[11]

10. In *Lecates v. State,*[12] the Delaware Supreme Court clarified 40 years of precedents related to "possession" in the context of both possession of a deadly weapon during the commission of a felony ("PDWDFC") and possession of a deadly weapon by a person prohibited ("PDWPP") (now PFBPP).[13] It is clear now that in the context of PFBPP it is a crime for the prohibited person to possess a firearm at any time.[14] "Possession of a deadly weapon by a person prohibited, without more, is the crux of a PDWPP charge. Physical availability and accessibility are not essential to establishing PDWPP."[15] The test for possession under the PFBPP statute is the three part constructive possession test where the defendant: (1) knew the location of the weapon; (2) had the ability to exercise dominion and control over the

---

[10] *Feddiman v. State,* 558 A. 2d 278, 288 (Del. 1989).

[11] *McGinnis v. State 2024* WL566607, at *26 (Del. 2024) (quoting *White v. State,* 243 A.3d 381, 396 (Del. 2020); *Handy v. State,* 803 A.2d 937, 940-941 (Del. 2002) (quoting *Brown v. Ohio,* 432 U.S. 161, 169 (1977)).

[12] 987 A. 2d 413, 421 (Del. 2009).

[13] PFDCF and PFBPP were enacted after PDWDCF and PDBPP addressing possession of firearms in particular. They are simply narrower versions of the more expansive crimes.

[14] *Lecates,* 987 A2d at 421.

[15] *Id.*

weapon; and (3) intended to guide the destiny of the weapon.[16]  Further, circumstantial evidence may prove constructive possession.[17]

11.    The State disputes that the evidence suggests that Gibson was in continuous possession of the firearm.[18]  It posits that the evidence merely shows he possessed it on four separate occasions.[19]  The Court disagrees.  It appears that Gibson was in continuous possession, ownership, or control of the same .357 revolver from at least May 15th when he was first seen with it until June 8th when it was recovered by the Wilmington Police.  This conclusion is supported by the testimony of Gibson's friend, Amanda Masteller, who identified the .357 caliber revolver and testified that he always carried it.

12.    For Gibson not to be in continuous possession of the .357 revolver during the time between the four dates he was charged with possessing it, he would have not known where it was, would have had no ability to exercise dominion and control over it, and would not have intended to guide its destiny.  But, somehow on the dates he was charged with possessing it, he would have learned where it was, regained the ability to exercise dominion and control over it, and resumed his intention to guide its destiny.  It makes far more sense that Gibson was in either

---

[16] *Id.* at 426.
[17] *Id.*
[18] Downs' Letter (Mar. 1, 2024).
[19] *Id.*

actual or constructive possession of the firearm continuously between May 15th and June 8th than does episodic periods of actual possession without intervals of constructive possession.

13.     As Gibson correctly points out, failure to merge the four counts would mean there would be no effective limiting principle circumscribing the number of counts the State could charge. Here, the State chose increments of three weeks, one day, and two days.[20] But, in theory, it could have chosen any different increment of time - a week, a day, an hour, or a minute, leading to absurd results.[21] Were the Court to accept the State's view, Gibson could continuously possess the same firearm while prohibited from possessing it, but could be convicted of possessing it only when someone saw him with it. The number of separate sightings could be limitless, however, resulting in innumerable counts of PFBPP.

14.     The only difference in the counts charged here is temporal. But, what makes the periods of time between the incidents dispositive of the number of charges? Gibson was prohibited from possessing a firearm the entire time between May 15th and June 8th. It was a crime for Gibson to possess the firearm at any time. He possessed the revolver that entire time. He was guilty of PFBPP at every

---

[20] May 15th to June 5th is three weeks; June 5th to June 6th is one day; and June 6th to June 8th is two days.

[21] The Delaware Supreme has commented on the absurd results failure to adhere to the multiplicity doctrine might produce. *See, Partick,* 2021 WL 4347744, at *5; *Handy,* 803 A.2d, at 945.

increment of time from May 15th through June 8th. The four counts of the indictment are simply moments in time when Gibson was committing the crime of PFBPP, by being observed in actual possession of the firearm. But, as *Lecates* teaches, physical availability and accessibility, in other words, actual possession, is not necessary to establish PFBPP. Constructive possession suffices. The single crime of PFBPP was charged in more than one count by dividing it into a series of temporal units in violation of the multiplicity doctrine. Accordingly, the four counts of PFBPP merge for sentencing.

**THEREFORE**, Defendant Keith Gibson's Motion to Merge Convictions for Sentencing is **GRANTED**.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton. J.

9