830 A.2d 502 (2003)
363 N.J. Super. 1
STATE of New Jersey, Plaintiff-Respondent,
v.
Jose ARENAS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 25, 2003.
Decided August 1, 2003.
*503 Yvonne Smith Segars, Public Defender, attorney for appellant (Susan Green, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Linda K. Danielson, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, CUFF and WINKELSTEIN.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
Defendant was indicted for purposeful or knowing murder, in violation of N.J.S.A. 2C:11-3a(1) and (2); felony murder, in violation of N.J.S.A. 2C:11-3a(3); aggravated arson, in violation of N.J.S.A. 2C:17-1a(1); possession of a destructive device for an unlawful purpose, in violation of N.J.S.A. 2C:39-4c; and possession of a prohibited destructive device, in violation of N.J.S.A. 2C:39-3a. The trial court denied defendant's pretrial motion to suppress two oral and two written statements he gave to the police. A jury acquitted defendant of purposeful or knowing murder but found him guilty of the lesser included offense of aggravated manslaughter. The jury also found defendant guilty of the remaining charges, including felony murder. The trial court sentenced defendant to life imprisonment for felony murder, subject to a sixty-three year and nine month period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court imposed a concurrent ten-year term for possession of a destructive device for an unlawful purpose. The court merged defendant's other convictions.
Defendant's convictions were based on a fire that occurred on March 1, 1998 in an abandoned factory in Paterson occupied by homeless persons. The victim, James Tenbe, was an occupant of the factory who lived in an area called the "hole." Defendant would sometimes stay in the same factory building as the victim.
When members of the fire department arrived at the burning factory building, they found Tenbe lying in the grass about fifteen feet away from the building, badly burned and in serious pain. When Tenbe was asked whether anyone else was in the building, he responded: "I hope the bastard that did this is in there."
The fire department's investigation indicated that the fire had started in the "hole" where the victim lived and that it had been "supported" by a flammable liquid. The fire department concluded that the cause was arson.
In a hospital interview, Tenbe told an investigator from the Passaic County Prosecutor's Office that he had fallen asleep in the hole after drinking a six-pack of beer. A short while later, he woke up, with his body on fire. Although Tenbe did not indicate how the fire started, he did say he had not smoked or lit any candles.
Around a week after the fire, another occupant of the abandoned factory, Norma Melendez, called the police. After first calling anonymously and identifying another person as the perpetrator, Melendez identified herself and came to the Paterson Police Department to be interviewed. At that interview, she identified defendant as the perpetrator.
*504 At trial, Melendez testified that she saw defendant enter the factory shortly before the fire carrying a grocery bag. About five or ten minutes later, she saw him leave. A little while later, she saw smoke coming from the factory.
After Melendez identified defendant as the likely perpetrator, the police reinterviewed Tenbe. When they arrived at the hospital, the police asked Tenbe to look at a set of photographs to see if he could identify the person who burned him and, according to one of the officers, Tenbe nodded as if to say "okay, ... let me see them." When Tenbe saw the photograph of defendant, he "open[ed] his eyes ... a little wider than usual and grabbed the photograph." The police officers had difficulty retrieving the photograph as Tenbe "crumbled" it in his hand. Tenbe did not say anything after crumbling the photograph. Three days after this second interview, Tenbe died of multiple-organ failure caused by the extensive burns he had suffered in the fire. Tenbe's death occurred before the police could obtain a statement from him explicitly identifying the perpetrator of the fire.
A week after the victim's death, the police arrested defendant on unrelated charges. After keeping him in jail overnight, the police brought defendant to an interview room around 8:15 a.m. and began questioning him about the fire. Approximately an hour later, defendant gave a statement admitting his involvement. In his first statement, which was typed by the police and signed by defendant, he claimed that "J.D.," another homeless person he had been drinking with in the park, asked him to throw a bottle of gasoline at the victim. According to defendant's original version of the offense:
He ... gave me a bottle with red liquid inside, and it had a rag coming out of the top. The bottle was inside a brown paper bag that you use when you go shopping. I could smell the gasoline from the bottle and the rag. He went inside the factory by himself and I went in after him. He waited for me to be inside the building and I walked through the hole and met him inside. He gave me the bag and told me to light it up and throw the bottle at the old man [Tenbe]. I lit the bottle up and walked over to the hole. When I looked in it was dark and I saw the old man laying in the bed. I told [J.D.] that I couldn't do it, but he kept telling me to do it and burn the old man. Then [J.D.] pushed me and I fell on the floor and the bottle which was already lit exploded on top of the old man and there was fire all over the place. It all lit up quickly, I got up and ran out of there before I got burnt.
After defendant gave this statement, the police located J.D. and brought him to the police station. J.D. denied any involvement in the crime. The police then brought defendant back into the room and told the two men that one of them was lying. At this point, defendant recanted his first statement and said "J.D. was not present when he set the man on fire." The police released J.D., and defendant gave a second inculpatory statement, which was also typed by the police and signed by defendant:
I had an argument with the old man that day because he wanted me out of the hole. I had been at Perudas drinking and I got drunk, I went to the hole and the old man told me that I couldn't stay there and he talked to me real nasty. So I left but I have this hose and I went to the Parking lot across the street and I got gas out of the tank of one of the cars that was parked there. I don't remember what kind a car it was[,] just that I got enough gas to fill a 40 oz. beer bottle. Then I went back to the hole *505 and the old man was asleep, so I poured the gasoline all over him and all over the bed and then I lit a match and when the fire went up I ran out of the building.
At trial, the State relied primarily upon police testimony concerning their second interview of Tenbe in which he implicitly identified defendant as the perpetrator, Melendez' testimony that she saw defendant enter the area where Tenbe lived shortly before the fire and defendant's two inculpatory statements.
[The court affirmed defendant's conviction and sentence, except that it vacated the NERA components of his sentence for felony murder. At the direction of the court, the list of issues raised by defendant and discussion of all issues other than defendant's argument that the court should have acquitted him of felony murder are omitted from the published version of the opinion.]
First, we consider defendant's argument that he should have been acquitted of felony murder because his act of setting fire to Tenbe was simply the method he used to commit a murder and not the predicate felony murder offense of arson.
At common law, the crime of arson was limited to "willful and malicious burning of the dwelling house of another." State v. Lucas, 30 N.J. 37, 75, 152 A.2d 50, 70 (1959). Through the years, the Legislature added statutory offenses prohibiting other forms of "burnings." See State v. Midgeley, 15 N.J. 574, 576-77, 105 A.2d 844, 845-46 (1954); II Final Report of the New Jersey Criminal Law Revision Commission, The New Jersey Penal Code: Commentary § 2C:17-1 at 204 (1971) (New Jersey Penal Code Commentary).
The drafters of the Code of Criminal Justice consolidated the common-law offense of arson and these statutory provisions under the Code section dealing with arson. New Jersey Penal Code Commentary, supra, at 204-06. N.J.S.A. 2C:17-1(a) provides:
A person is guilty of aggravated arson, a crime of the second degree, if he starts a fire or causes an explosion, whether on his own property or another's:
(1) Thereby purposely or knowingly placing another person in danger of death or bodily injury; or
(2) With the purpose of destroying a building or structure of another; or
(3) With the purpose of collecting insurance for the destruction or damage to such property under circumstances which recklessly place any other person in danger of death or bodily injury; or
(4) With the purpose of destroying or damaging a structure in order to exempt the structure, completely or partially, from the provisions of any State, county or local zoning, planning or building law, regulation, ordinance or enactment under circumstances which recklessly place any other person in danger of death or bodily injury; or
(5) With the purpose of destroying or damaging any forest.[1]
Thus, the intent to burn a "dwelling house" or other structure is no longer an element of most forms of arson proscribed by the Code.
Defendant was charged with violating N.J.S.A. 2C:17-1a(1), which proscribes "start[ing] a fire or caus[ing] an explosion, whether on [the perpetrator's] own property or another's ... [t]hereby *506 purposely or knowingly placing another person in danger of death or bodily injury." Consequently, this offense can be committed without any purpose to destroy a building or other structure. In fact, it can be committed in an open field or a parking lot. The sole mens rea element of the offense is "purposely or knowingly" placing another person in danger of death or bodily injury by starting a fire or causing an explosion. Thus, a defendant may be convicted of this form of arson for starting a fire that directly targets another person. Therefore, we reject defendant's argument that the evidence was insufficient to support his conviction for arson because "the crime of arson ... involves setting fire to a `building or structure' and not a person."
We next consider whether defendant could be found guilty of felony murder, based on the predicate offense of aggravated arson, in violation of N.J.S.A. 2C:17-1a(1). At the time defendant set fire to Tenbe, N.J.S.A. 2C:11-3a(3) provided in relevant part:
Criminal homicide constitutes murder when ... [i]t is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary, kidnapping or criminal escape, and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants....
Thus, N.J.S.A. 2C:11-3a(3) treats any "arson" as a predicate offense that will support a conviction for felony murder, without distinguishing among the various types of arson proscribed by N.J.S.A. 2C:17-1(a) and (b). Consequently, defendant's conviction for aggravated arson constituted the requisite predicate felony to support his conviction for felony murder.
We reject defendant's argument that because the State's theory was that he set the fire with the intent of killing Tenbe, he could not be found guilty of felony murder. Although "a wholly unintended killing is [felony] murder if it results from the commission of the underlying [predicate] felony[,]" State v. Darby, 200 N.J.Super. 327, 331, 491 A.2d 733, 736 (App.Div.1984), certif. denied, 101 N.J. 226, 501 A.2d 905 (1985), this does not mean that a defendant cannot be found guilty of felony murder for an intended killing committed in the course of a predicate felony. It only means that the intent required to support a conviction for felony murder is the intent to commit the predicate felony. See State v. Cooper, 151 N.J. 326, 360, 700 A.2d 306, 322 (1997). If the State's evidence shows that the defendant also intended to kill the victim, the defendant may be found guilty of both purposeful murder and felony murder. Id. at 361, 700 A.2d at 322-23.
Moreover, even if the State believes its evidence shows that the defendant intended to kill the victim, the jury may reach a different conclusion. In this case, for example, the jury acquitted defendant of purposeful or knowing murder, thus indicating that, in the jury's view, the State failed to prove beyond a reasonable doubt that defendant purposely or knowingly "cause[d] death or serious bodily injury resulting in death" by setting fire to Tenbe. N.J.S.A. 2C:11-3a(1),(2). Nevertheless, the jury found defendant guilty of the predicate felony murder offense of arson, thus indicating that defendant had "purposely or knowingly plac[ed] [Tenbe] in danger of death or bodily injury." We cannot be sure what view the jury took of the evidence in reaching this conclusion. However, the jury may have found that defendant was in a highly intoxicated condition when he set fire to Tenbe and consequently did not intend or realize it was *507 practically certain that this act would cause "death" or "serious bodily injury," N.J.S.A. 2C:11-3a(1),(2), but that he had sufficient cognition to intend or realize it was practically certain that setting fire to Tenbe would cause "bodily injury," thus providing the requisite factual foundation for finding him guilty of aggravated arson under N.J.S.A. 2C:17-1a(1) and felony murder under N.J.S.A. 2C:11-3a(3).
If defendant's theory were accepted, it would mean that a defendant who set fire to what he believed to be an empty building could be found guilty of felony murder if a person happened to be in the building and died as a result of the fire, but that a defendant who threw an incendiary device into a bedroom with the purpose of killing the occupants could not be found guilty of felony murder. It seems improbable the Legislature intended to exclude the most culpable form of arson where the perpetrator's purpose in setting the fire is to place another person in danger of death or bodily injuryfrom responsibility for felony murder while exposing the perpetrator of a less culpable arson to a potential felony murder conviction. Although a defendant whose purpose in setting a fire is to kill another person may be found guilty of purposeful or knowing murder, N.J.S.A. 2C:11-3a(3) does not exclude cases where the evidence may also support a conviction for purposeful or knowing murder from the purview of felony murder. Felony murder is not simply a lesser included offense of purposeful or knowing murder. See Cooper, supra, 151 N.J. at 360, 700 A.2d at 322. In fact, it is common in robbery cases where the victim dies, including by an execution-style killing, to charge the defendant with both purposeful or knowing murder and felony murder. See, e.g., State v. Feaster, 156 N.J. 1, 21-27, 30, 716 A.2d 395, 403-07, 408 (1998); State v. Hines, 303 N.J.Super. 311, 313-15, 696 A.2d 780, 781-82 (App.Div. 1997); State v. Russo, 243 N.J.Super. 383, 388-89, 579 A.2d 834, 837 (App.Div.1990), certif. denied, 126 N.J. 322, 598 A.2d 882 (1991). Therefore, we are satisfied that the Legislature intended felony murder under N.J.S.A. 2C:11-3(3) to include cases in which the defendant intended to kill the victim and that defendant's conduct could be properly found to constitute felony murder.
Accordingly, we affirm defendant's convictions but remand for entry of an amended judgment of conviction that eliminates the NERA components of defendant's sentence and includes the thirty-year period of parole ineligibility required by N.J.S.A. 2C:11-3b(1).
NOTES
[1] N.J.S.A. 2C:17-1(b), dealing with third-degree arson, tracks N.J.S.A. 2C:17-1(a), except that the mens rea element of the third degree offenses is recklessness rather than purposeful or knowing conduct.