NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1486-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GERALD HILL-WHITE, a/k/a
KEVIN FAYSON and GERALD W. HILL,

    Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **August 10, 2018**
>
> **APPELLATE DIVISION**

Submitted January 23, 2018[1] — Decided August 10, 2018

Before Judges Reisner, Gilson, and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 12-05-0475.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W. Kirsch, Assistant Deputy Public Defender, of counsel and on the briefs).

Angelo J. Onofri, Mercer County Prosecutor, attorney for respondent (Christopher Malikschmitt, Assistant Prosecutor, of counsel and on the briefs).

The opinion of the court was delivered by

REISNER, P.J.A.D.

---

[1] After the case was calendared, we directed the parties to submit supplemental briefs on the issue of multiplicity. Those briefs were filed in June 2018.

Defendant Gerald Hill-White appeals from his convictions for ten counts of second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1); one count of third-degree arson, N.J.S.A. 2C:17-1(b)(1); and one count of second-degree burglary, N.J.S.A. 2C:18-2.[2] He does not appeal from his conviction for one count of third-degree terroristic threats, N.J.S.A. 2C:12-3(a). He also appeals from the aggregate sentence of thirty-five years in prison, thirty of which are subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant presents the following points of argument:

> POINT I: THE JUDGE'S ANSWER TO THE JURY'S LEGAL QUESTION ABOUT THE DIFFERENCE BETWEEN A KNOWING AND A RECKLESS STATE OF MIND WAS FUNDAMENTALLY FLAWED, INCLUDING TELLING THE JURY THAT THE TWO ARE "NOT VERY MUCH DIFFERENT." (NOT RAISED BELOW)

> POINT II: A CRIMINAL ATTEMPT CAN ONLY BE COMMITTED WITH A PURPOSEFUL STATE OF MIND; YET THE JURY INSTRUCTION AND RE-INSTRUCTION ON BURGLARY DID NOT MAKE THAT POINT CLEARLY, THUS CONSTITUTING PLAIN ERROR; IF THE ARSON CONVICTIONS ARE REVERSED, THE MERGED BURGLARY CONVICTION MUST BE REVERSED AS WELL. (NOT RAISED BELOW)

> POINT III: THE ARSON CONVICTIONS SHOULD HAVE MERGED. (NOT RAISED BELOW)

> POINT IV: CONSECUTIVE SENTENCES SHOULD NOT HAVE BEEN IMPOSED WHEN ONE OVERALL CRIMINAL

---

[2] The court dismissed one of the twelve arson counts for lack of evidence of the victim's presence in the building during the fire.

EPISODE OCCURRED; ALSO, TWO EXTENDED TERMS
WERE ILLEGALLY IMPOSED.

We reverse all but one of the arson convictions, because the State violated the rule against multiplicity. Where a defendant sets one fire, it is improper for the State to charge that defendant with multiple counts of arson based on the number of victims who were endangered by the fire. The State may address the harm to the victims by charging the defendant with aggravated assault, attempted murder, or other applicable offenses, in addition to the arson count.

We affirm defendant's conviction on one count of second-degree arson. We also affirm the burglary conviction. For defendant's one second-degree arson conviction, we affirm the extended-term sentence of twenty years in prison subject to NERA. We also affirm the five-year consecutive sentence imposed for terroristic threats. The additional sentences for arson are hereby vacated. We remand to the trial court for the limited purpose of issuing an amended judgment of conviction consistent with this opinion.

I

In light of the limited issues raised, it is not necessary to recount the trial record in detail. Defendant does not challenge the weight of the evidence, which in this case was

overwhelming. The State's proofs included security videos of defendant at the crime scene, expert testimony, DNA evidence, cell phone records and threatening text messages, and defendant's statement to the police. Defendant's trial testimony significantly contradicted his earlier statement, and even on a cold record, his testimony could fairly be described as incredible.

We summarize the State's proofs as follows. Defendant was jealous and angry because his former girlfriend, K.G., had ended their sexual relationship and had begun a sexual relationship with defendant's brother. In the days leading up to the fire, and on the day of the fire, defendant sent K.G. text messages threatening to kill her and telling her that she was "dead." On the night of November 3, 2011, defendant broke into the building where K.G. lived in a third-floor apartment, and at a time when defendant's brother was visiting K.G. The break-in was captured on a security video, which showed defendant with his shoes covered by plastic bags and carrying a red can.

On the third floor, defendant poured gasoline directly outside the door of K.G.'s apartment and then poured a line of gasoline down the hallway toward the exit stairway door. He set the gasoline on fire, left the building, and abandoned the red gasoline can, a hat, and some other items in the bed of a nearby

4

truck. The police found those items; defendant's DNA was on the hat.

At the time defendant set the fire, he knew that other apartments on the third floor were occupied by elderly and disabled residents. The hallway was engulfed in smoke and flames, temporarily trapping the residents in their apartments. Fortunately, the fire caused the building's sprinkler system to activate, and the flames were quickly extinguished.

## II

Defendant's first two arguments merit little discussion. See R. 2:11-3(e)(2). We find no plain error with respect to defendant's first point, asserting that the trial judge erred in responding to the jury's question about the difference between "knowing" and "reckless." The judge did remark that the knowing and reckless states of mind were "not very much different." However, viewed in context, that comment would not have confused the jury, because the judge also explained in detail and correctly, the difference between the two states of mind. In light of the record, we find no plain error. See State v. Prall, 231 N.J. 567, 587-88 (2018).

Defendant next argues, for the first time on appeal, that the judge erred in charging the jury as to the required state of mind

for burglary.[3]   We agree, but find no plain error. See R. 1:7-2; R. 2:10-2.   Second-degree burglary requires proof that defendant entered a structure without permission, with the purpose to commit an offense therein, and that during the course of the burglary, defendant either purposely, knowingly or recklessly inflicted bodily injury on a person, or attempted to inflict injury.   See N.J.S.A. 2C:18-2.   An attempt requires purposeful conduct.   See State v. Robinson, 136 N.J. 476, 485 (1994).

As defendant correctly contends, multiple times during the charge, the judge misstated the standard, telling the jury that defendant must have "purposely, knowingly or recklessly inflicted or attempted to inflict bodily injury" on the victims.   However, in this case, there was overwhelming evidence that during the burglary, defendant purposely attempted to inflict bodily injury on one or more of the residents.   He not only entered the building, but he poured gasoline outside K.G.'s door and set it alight.   On this record, there is no possibility that the error produced an unjust result. See R. 2:10-2; Prall, 231 N.J. at 587-88. We affirm the burglary conviction.

---

[3]   The trial court merged the burglary conviction with the arson convictions, a disposition from which the State has not cross-appealed. Defendant states that his argument on this point would only be relevant if all of the arson convictions were reversed and the burglary conviction were unmerged from the arson convictions. Nonetheless we address the issue.

A-1486-15T4

## III

Next we address the issue defendant characterizes as merger, but which we conclude is more properly addressed as multiplicity, or improper charging of multiple counts of an offense when the facts asserted would only support a conviction for one offense.

A. The Doctrines of Merger and Multiplicity

"Merger is based on the principle that 'an accused [who] has committed only one offense . . . cannot be punished as if for two.'" State v. Miller, 108 N.J. 112, 116 (1987) (quoting State v. Davis, 68 N.J. 69, 77 (1975)) (alteration in original); see N.J.S.A. 2C:1-8(a) (defining when merger is statutorily required); State v. Robinson, 439 N.J. Super. 196, 200 (App. Div. 2014) (describing the courts' more flexible non-statutory approach). "[W]hat is disallowed is double punishment for the same offense." Davis, 68 N.J. at 77. Merger "implicates a defendant's substantive constitutional rights." State v. Tate, 216 N.J. 300, 302 (2013) (quoting Miller, 108 N.J. at 116). Our Supreme Court has recognized that "[n]ot only does merger have sentencing ramifications, it also has a measurable impact on the criminal stigma that attaches to a convicted defendant." Tate, 216 N.J. at 302-03 (quoting State v. Rodriquez, 97 N.J. 263, 271 (1984)).

With respect to some offenses, the Legislature may "split a single, continuous transaction into stages, elevate each stage to

a consummated crime, and punish each stage separately." <u>Davis</u>, 68 N.J. at 78; <u>see</u> <u>id.</u> at 78-80; <u>see also</u> <u>Tate</u>, 216 N.J. at 312 ("The cases not requiring merger have had clear statutory differences illustrating legislative intent to fractionalize a course of conduct."). However, "[w]ere the legislature, in attempting to create separate crimes, to do no more than simply apply different labels to what is in fact the same charge, it would plainly exceed its authority." <u>Davis</u>, 68 N.J. at 80.

Where merger is appropriate because the defendant has been convicted of two separate crimes arising from one act, the court may, despite the merger, impose "the more severe aspects of the sentence for each offense." <u>Robinson</u>, 439 N.J. Super. at 202; <u>see</u> <u>State v. Pennington</u>, 273 N.J. Super. 289, 295 (App. Div. 1994) ("Convictions merged for the purpose of sentencing are not extinguished" and may be unmerged if the conviction into which they were merged is reversed.).

On the other hand, merger presupposes the existence of at least two valid convictions. <u>See</u> N.J.S.A. 2C:1-8(a) (prefacing the statutory merger doctrine with the requirement that "the same conduct . . . may establish the commission of more than one offense"). If a defendant cannot lawfully be <u>convicted</u> of an offense, the invalid conviction must be reversed, rather than merged into another, valid conviction. <u>See</u> <u>Rodriguez</u>, 97 N.J. at

271 (citing State v. Landeros, 32 N.J. Super. 168, 172 (App. Div. 1954), rev'd on other grounds, 20 N.J. 69 (1955)).

In contrast to merger, the rule against multiplicity prohibits the State from charging a defendant with multiple counts of the same crime, when defendant's alleged conduct would only support a conviction for one count of that crime. "[A] defendant may not be tried for two identical criminal offenses in two separate counts based upon the same conduct." State v. Salter, 425 N.J. Super. 504, 515-16 (App. Div. 2012) (citing State v. Widmaier, 157 N.J. 475, 498-90 (1999)). Thus, "[m]ultiplicity occurs when a single offense is charged in several counts of an indictment." State v. Evans, 189 N.J. Super. 28, 31 (Law Div. 1983).[4]

The bar against multiplicity relates to the Double Jeopardy principle prohibiting "multiple punishments for the same offense." Salter, 425 N.J. Super. at 515-16 (quoting Widmaier, 157 N.J. at 489-90). While multiplicity begins as a charging error, it can obviously result in a defendant being improperly convicted of multiple crimes, when he or she only committed one crime. Evans, 189 N.J. Super. at 31-32. Multiplicity may also implicate a defendant's right to a fair trial, because trying a defendant for

_____

[4] Evans is not binding on us, but we find it persuasive.

multiple counts of the same offense, when only one offense was committed, may prejudice the jury.[5] See Evans, 189 N.J. Super. at 31-32 (quoting United States v. Reed, 639 F.2d 896, 904 (2d Cir. 1981)).

A court may remedy multiplicity by setting aside all but one of the multiple convictions after the verdict, but the better approach is to address the issue before trial by dismissing the improperly duplicative counts of the indictment. See Evans, 189 N.J. Super. at 32.

B. The Arson Statute

In order to determine whether the State may charge a defendant with multiple counts of arson without violating the rule against multiplicity, we must construe the arson statute.

In determining the meaning of a statute, our goal is "to give effect to the intent of the Legislature." State v. Morrison, 227 N.J. 295, 308 (2016) (quoting Maeker v. Ross, 219 N.J. 565, 575 (2014)). We first examine the words of the statute and attribute to them their ordinary meaning. State v. Malik, 365 N.J. Super.

---

[5] While we find improper multiplicity in the arson charges and convictions here, we reject defendant's argument that the improper multiple charges warrant reversing his arson conviction altogether due to jury prejudice. As discussed earlier in this opinion, the evidence against defendant was overwhelming; he would have been convicted of second-degree arson, even if he had been tried on one count of arson instead of twelve counts. See Prall, 231 N.J. at 587-88.

267, 274 (App. Div. 2003). "[I]f the language is plain and its meaning clear, the inquiry ends there," and we enforce the statute as written. Ibid.

If the words of the statute are not clear, or if the "statutory language yields more than one plausible interpretation," we consider extrinsic evidence to decipher the Legislature's intent. State v. Shelley, 205 N.J. 320, 323-24 (2011) (quoting DiProspero v. Penn, 183 N.J. 477, 492-93 (2005)). "Such extrinsic sources, in general, may include the statute's purpose, to the extent that it is known, and the relevant legislative history." State v. Drury, 190 N.J. 197, 209 (2007). We consider words and phrases within the statute "not only in their own contextual setting, but in relation to surrounding provisions in the statutory scheme." Malik, 365 N.J. Super. at 276.

We construe the statute in a sensible manner, and consistent with its purpose, avoiding a construction that will lead to an absurd result. Morrison, 227 N.J. at 308. "When interpreting the intent of the Legislature, any unreasonable construction must be rejected when a reasonable reading is apparent." State v. Carlos, 187 N.J. Super. 406, 414 (App. Div. 1982). Where a criminal statute is subject to a broad and a narrow interpretation, the court is "constrained to apply the narrow one." Morrison, 227

11

N.J. at 314 (citing Shelley, 205 N.J. at 328); see also Drury, 190 N.J. at 209-10 ("if plain meaning and extrinsic sources" do not yield a clear answer, the court must resolve ambiguity in a criminal statute in favor of the defendant).

The arson statute divides the crime into two categories (aggravated arson and arson), with gradations ranging from first to fourth degree depending on the defendant's mental state, the type of property burned, the purpose of the fire, and the danger to people. N.J.S.A. 2C:17-1. Notably, only some forms of arson include danger to others as an element of the offense. With the exception of arson for hire, all other types of arson require damage to property by burning or explosion.

Second-degree aggravated arson is defined as starting a fire or causing an explosion, whether on the actor's property or someone else's property:

> (1) Thereby purposely or knowingly placing another person in danger of death or bodily injury; or
>
> (2) With the purpose of destroying a building or structure of another; or
>
> (3) With the purpose of collecting insurance for the destruction or damage to such property under circumstances which recklessly place any other person in danger of death or bodily injury; or
>
> (4) With the purpose of destroying or damaging a structure in order to exempt the

structure, completely or partially, from the provisions of any State, county or local zoning, planning or building law, regulation, ordinance or enactment under circumstances which recklessly place any other person in danger of death or bodily injury; or

(5) With the purpose of destroying or damaging any forest.

[N.J.S.A. 2C:17-1(a).]

Third-degree arson consists of purposely starting a fire or causing an explosion, whether on the actor's property or another's:

(1) Thereby recklessly placing another person in danger of death or bodily injury; or

(2) Thereby recklessly placing a building or structure of another in danger of damage or destruction; or

(3) With the purpose of collecting insurance for the destruction or damage to such property; or

(4) With the purpose of destroying or damaging a structure in order to exempt the structure, completely or partially, from the provisions of any State, county or local zoning, planning or building law, regulation, ordinance or enactment; or

(5) Thereby recklessly placing a forest in danger of damage or destruction.

[N.J.S.A. 2C:17-1(b).]

Fourth-degree arson occurs when a person has a duty to report or extinguish a fire and he or she fails to comply with that duty. N.J.S.A. 2C:17-1(c). The statute provides:

13                                          A-1486-15T4

A person who knows that a fire is endangering life or a substantial amount of property of another and either fails to take reasonable measures to put out or control the fire, when he can do so without substantial risk to himself, or to give prompt fire alarm, commits a crime of the fourth degree if:

(1) He knows that he is under an official, contractual, or other legal duty to prevent or combat the fire; or

(2) The fire was started, albeit lawfully, by him or with his assent, or on property in his custody or control.

[N.J.S.A. 2C:17-1(c).]

While a few forms of arson include danger to a person as an element of the offense (i.e., setting fire to purposely place another in danger; setting fire to collect insurance proceeds or evade regulations while recklessly placing another in danger; and purposely setting fire that recklessly endangers others), most forms of arson require no proof of harm or danger to others (i.e., setting fire to destroy a structure or forest; recklessly placing a structure or forest in danger of damage or destruction; setting fire to collect insurance proceeds or to evade regulations; failing to report a fire; arson for hire; and, in some instances, setting fire to a place of worship).

Notably, the Legislature reserved the most serious punishment for arson offenses that do not necessarily endanger human life. First-degree arson comprises arson for hire and arson of a

14

religious structure. Arson for hire does not require proof either that a fire was actually set or that any person was harmed or endangered. See State v. Allison, 208 N.J. Super. 9, 25 (App. Div. 1985).

> Any person who, directly or indirectly, pays or accepts or offers to pay or accept any form of consideration including, but not limited to, money or any other pecuniary benefit, regardless of whether any consideration is actually exchanged for the purpose of starting a fire or causing an explosion in violation of this section commits a crime of the first degree.
>
> [N.J.S.A. 2C:17-1(d).]

Arson of a religious structure encompasses some acts that require danger to human life and some that do not; the common denominator is that the offense must target a public house of worship:

> Notwithstanding the provisions of any section of this Title to the contrary, if a person is convicted pursuant to the provisions of subsection a., b. or d. of this section and the structure which was the target of the offense was a church, synagogue, temple or other place of public worship, that person commits a crime of the first degree . . . .
>
> [N.J.S.A. 2C:17-1(g).]

Although arson is classified in the Code as a crime against property, we may not draw conclusions from its placement in the Code. See N.J.S.A. 2C:1-1(f) ("[N]o implication or presumption of a legislative construction is to be drawn" from the "classification

and arrangement of the several sections of the code."). On the other hand, based on a common sense reading of the statute as a whole, we conclude that the Legislature deemed arson as an offense against property, the gravamen of which is, in general, setting a fire. See State v. Olivero, 221 N.J. 632, 639 (2015) ("Statutory language is to be interpreted in a common sense manner to accomplish the legislative purpose.").

In discussing the legislative history of the Criminal Code, which consolidated all offenses into Title 2C in 1978, the New Jersey Criminal Law Revision Commission wrote that "the words 'starts a fire or causes an explosion' . . . identify the kind of behavior which is the subject of" N.J.S.A. 2C:17-1. II Final Report of the N.J. Criminal Law Revision Comm'n, The N.J. Penal Code: Commentary § 2C:17-1 at 205 (1971) (N.J. Penal Code Commentary). Further, with the exception of arson for hire and failure to report an arson, all other types of arson are "complete as soon as the fire [is] started." State v. Lewis, 223 N.J. Super. 145, 152 (App. Div. 1988).

The development of arson from common law to its current statutory form also supports a finding that arson is a crime against property. At common law, arson was defined as the willful and malicious burning of the house or adjacent structures of another. State v. Fish, 27 N.J.L. 323, 324 (1859); State v.

<u>Arenas</u>, 363 N.J. Super. 1, 6 (App. Div. 2003). The offense was "against the possession of another," and the purpose of it was to protect the person in possession of the house. <u>Fish</u>, 27 N.J.L. at 324; <u>accord</u> <u>State v. Midgeley</u>, 15 N.J. 574, 576 (1954) ("The common law felony [of arson] was a crime against another's habitation, not against another's property but against his life and safety at his place of abode, that is, his dwelling house.").

Over time, the definition of arson changed to eliminate the requirement that the property be within another's possession and to add other types of property, such as ships, buildings other than houses, land, trees, crops, cranberry bogs, fences, and lumber. <u>See</u> <u>Arenas</u>, 363 N.J. Super. at 6; <u>Midgeley</u>, 15 N.J. at 578; <u>N.J. Penal Code Commentary</u> at 204. In its current form, arson proscribes the burning of property, regardless of possession, and in most cases, regardless of whether any person is harmed or threatened. N.J.S.A. 2C:17-1. Where it is included, danger to others relates to the degree of the offense. <u>See</u> N.J.S.A. 2C:17-1(a)(1), (3), and (4) (second-degree aggravated arson); N.J.S.A. 2C:17-1(b)(1) (third-degree arson).

C. <u>Comparison to Other Statutes</u>

In construing the arson statute, it is also helpful to consider the wording and interpretation of other statutes addressing crimes against property and crimes against persons.

The State argues that because second and third degree arson, as defined in N.J.S.A. 2C:17-1(a)(1) and (b)(1), include placing another person in danger, the statute should be construed as permitting multiple charges of arson if multiple victims are endangered. However, when we consider other statutes that include harm to persons as an element, we find the State's argument unpersuasive.

We begin by considering the way our courts have construed the robbery statute. Theft can be transformed into robbery, if the thief threatens someone with bodily injury or "[i]nflicts bodily injury or uses force" on another person, while committing or attempting to commit the theft or while escaping from the scene. N.J.S.A. 2C:15-1(a). Arguably, this portion of the robbery statute was intended to prevent and punish violence against theft victims or bystanders. However, that does not mean that a thief can be charged with multiple counts of robbery if he or she injures or threatens to injure multiple people while committing one theft. See State v. Sewell, 127 N.J. 133, 137-38 (1992).

In Sewell, the Court held that a defendant who injured several bystanders after committing one theft could only be convicted of one count of robbery. Ibid. Likewise, in State v. Lawson, 217 N.J. Super. 47, 51 (App. Div. 1987), we held that the robbery statute cannot "sustain two robbery convictions for assaults upon

two victims" while fleeing after a theft "from a third victim." See also Carlos, 187 N.J. Super. at 406, 415-16 (where the defendant committed theft against two victims, he could only be convicted of two counts of robbery even though he threatened four people).

It is likewise useful to consider the burglary statute, which is also graded based on harm to victims. Burglary consists of entering a structure with the purpose to commit an offense therein. N.J.S.A. 2C:18-2. Burglary is a third-degree crime, unless the actor commits or attempts to commit certain additional acts in the course of the burglary. For example, burglary is a second-degree crime if in the course of committing the offense, the actor "purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone[.]" N.J.S.A. 2C:18-2(b). However, that does not mean that one burglary can be charged as multiple burglaries if the actor harms or menaces multiple people in the course of committing the burglary. See Lewis, 223 N.J. Super. at 153 (stating that a second-degree burglary conviction would not merge with convictions for aggravated manslaughter and other offenses, because the crime of burglary "was completed upon entry" into the building).

We also glean insight into the multiplicity issue by considering statutes that unambiguously address crimes against the

person. The statutes prohibiting assault and homicide primarily grade offenses against persons based on the degree of harm the actor causes or attempts to cause to the victim. For example, simple assault, a disorderly persons offense, is defined, in part, as attempting to cause or causing "bodily injury to another," N.J.S.A. 2C:12-1(a)(1), while aggravated assault, a second, third or fourth-degree offense, is defined, in part, as causing or attempting to cause "serious bodily injury to another." N.J.S.A. 2C:12-1(b)(1). Portions of the grading section provide that aggravated assault is a higher degree crime if the victim is actually injured. See N.J.S.A. 2C:12-1(b). Murder and felony murder are first-degree crimes requiring proof that the actor killed the victim or that the victim was killed while the actor was engaged in committing or attempting to commit certain other enumerated offenses. See N.J.S.A. 2C:11-3(a).

By contrast, second and third-degree arson do not require proof that any victim was actually injured or killed, and the offenses are not graded differently depending on whether victims were threatened with injury, serious injury, or death. In fact, the first-degree arson offenses either require no proof that anyone was endangered, or turn on the use of the structure rather than the degree of danger to the victims. See N.J.S.A. 2C:17-1(d) (arson for hire); N.J.S.A. 2C:17-1(g) (arson of a place of public

worship).   The Legislature carefully crafted the statutes on assault and murder, to differentiate the grading and the punishment depending on the degree of harm or attempted harm to the victim. The arson statute is not similarly crafted, suggesting that its primary focus is not on punishing for the harm caused to each individual victim, but on punishing for the act of setting the fire.

Because the arson statute does not distinguish between the type or degree of harm to the person, under the State's interpretation, someone who set a fire for the purpose of slightly injuring five people could be punished more harshly than someone who set a fire for the purpose of killing one person. This anomalous result suggests that the State's construction of the arson statute is contrary to the Legislature's intent.  It is one thing to punish a crime — such as theft, burglary, or arson — more harshly if people are endangered or hurt while the crime is being committed, and quite another thing to permit multiple charges and multiple punishments without differentiating among the degrees of harm caused to the victims.  We conclude that the Legislature intended each act of fire-setting to be charged and punished as one crime, and intended that the injury or intended injury to each

21

victim be charged and punished using the appropriate statutes governing assault or homicide.[6]

All of the New Jersey published opinions we have found reflect that approach to charging. The State has not cited to any published opinion of our courts in which a defendant who set one fire was charged with multiple counts of arson. For example, in State v. Craig, 237 N.J. Super. 407, 409 (App. Div. 1989), and Lewis, 223 N.J. Super. at 145, the defendant set one fire that killed or injured multiple people. In those cases, the defendant was charged with one count of arson and multiple counts of murder or aggravated assault. See also Prall, 231 N.J. at 575. In Craig, the defendant was convicted of one count of arson and multiple counts of manslaughter. 237 N.J. Super. at 409. The issue was whether the defendant's several manslaughter convictions should merge into one manslaughter conviction; we held they did not merge. Id. at 413.

In Lewis, the issue was whether the convictions for arson and aggravated assault should have merged with the conviction for aggravated manslaughter. 223 N.J. Super. at 151-53. As in this case, Lewis set one fire in an apartment building, although in

---

[6] We do not intend to address the situation where a defendant sets fire to one building, or unit, and the fire spreads to another building or unit. That issue is not before us.

that case, the fire also caused the death of one victim and serious injuries to several others. We rejected Lewis's merger argument, reasoning that

> the legislature designated fire setting separately from other forms of assaultive conduct, with a "specific intent to fractionalize the offense." The arson was complete as soon as the fire was "started."
>
> [Lewis, 223 N.J. Super. at 152 (citations omitted).]

Lewis also reasoned that the legislative history of the arson statute indicated that the Legislature addressed the issue of arson's consequences by grading it as a more serious crime if it caused danger to persons:

> The Criminal Law Revision Commissioners originally recommended that the arson statute not grade the offense according to its danger to persons because "[t]o make any dangerous burning a crime of the second degree would be inconsistent with Sections 2C:12-1 . . . ." relating to assault. The legislature's refusal to adopt this recommendation is indicative of its intent to punish arson separately based upon the risk that fire presents.
>
> [Id. at 152-53 (citations omitted).]

In other words, instead of classifying arson as a form of assault, the Legislature classified it as a property crime, based on setting a fire. Ibid. But, the Legislature chose to grade fire-setting more seriously if it endangered human life. See Senate Judiciary Committee Statement to Senate, No. 738 (May 15,

1978). The Legislature also intended to fractionalize arson, in the sense that a defendant can be charged and punished for setting the fire, in addition to being charged and punished for assault and murder based on the injury or death caused by the fire. See Miller, 108 N.J. at 119 (addressing fractionalizing of offenses); State v. Mirault, 92 N.J. 492, 505-06 (1983). Thus, an arson conviction does not merge with accompanying assault or homicide convictions. Lewis, 223 N.J. Super. at 152. Nonetheless, that does not mean that a defendant can be charged with multiple counts of arson for setting one fire.

The State relies on the following language from Craig: "the view that there are as many crimes committed as there are victims finds overwhelming support in other jurisdictions." 237 N.J. Super. at 416. However, that language refers to multiple counts of assault or homicide, not multiple counts of arson. Ibid. Two of the cases that Craig cited in support of the quoted language involved arson. In both cases, a defendant was charged with one count of arson, and multiple counts of attempted murder or aggravated assault. See Neal v. State, 357 P.2d 839, 841 (Cal.

1960); <u>State v. Rieck</u>, 286 N.W.2d 724, 725 (Minn. 1979). We cannot accept the State's argument.[7]

Although it is not binding on us, we find support for our conclusion in <u>Handy v. State</u>, 803 A.2d 937 (Del. 2002), decided by the Supreme Court of Delaware. In <u>Handy</u>, the State charged the defendant with multiple counts of attempted murder and multiple counts of arson, for setting one fire that endangered several victims. <u>Id.</u> at 939. In construing Delaware's arson statute, the court traced the history of the statute back to the common law and concluded that historically, arson statutes contemplated that arson should be "one single, serious charge based [on] the fact that fire is inherently, and unpredictably, destructive." <u>Id.</u> at 943. The court held that "a charge of multiple counts of first degree arson for multiple intended victims based on a single fire constitutes an unconstitutional multiplicity prohibited by the Double Jeopardy Clause." <u>Id.</u> at 939.[8] The court reasoned that

---

[7] The State's reliance on <u>State v. Carey</u>, 168 N.J. 413 (2001), and <u>State v. Molina</u>, 168 N.J. 436 (2001), is misplaced. Those cases involved assault, not arson, and did not address multiplicity of charges. Rather, the cases addressed the appropriateness of imposing consecutive sentences for assault by auto, where multiple victims were killed or injured in a single drunk driving accident.

[8] The courts of Idaho and Texas have construed their states' arson statutes the same way. <u>State v. Payne</u>, 3 P.3d 1251, 1254 (Idaho 2000) ("Although Payne's act of arson was enhanced to aggravated arson by virtue of the deaths of two persons, it does not follow

25                                                    A-1486-15T4

"the basis of the crime of arson is directed to the property," while the presence of endangered inhabitants was "one element in fixing the degree of arson."  Ibid.

The court also reasoned that, because the Delaware statute was phrased in terms of a fire creating the danger of harm, as opposed to actual harm, to one or more persons, permitting multiple charges of arson based on setting one fire could lead to absurd results.

> The logical extension of the State's argument is that, in allowing multiple counts of arson for multiple intended victims, there could be some absurd outcomes . . . . Suppose, for example, that a defendant sets a fire in a closet next to a crowded banquet hall with 500 patrons, a fire alarm sounds, all file out quietly and uneventfully, and the defendant is captured and charged. May the State charge the defendant with 500 counts of arson? . . . There is nothing in the Delaware Code to indicate that the General Assembly intended 500 charges of arson in that situation, rather than one count to reflect the inherently dangerous nature of the offense of arson.
>
> . . . .

---

that Payne may be convicted for two acts of arson when there was only one fire."); Lozano v. State, 860 S.W.2d 152, 155-56 (Tex. App. 1993) (Although injury to the victims increased the degree of the arson, "appellant committed a single offense, allowing a single unit of prosecution, when he committed arson by setting a single house on fire.").  We agree with Handy that the one published case reaching a different result contains little rationale and is far less persuasive than the lengthy dissent in that case.  See People v. Hanks, 528 N.E.2d 1044 (Ill. App. Ct. 1988).

The fact that the Delaware first degree arson provision focuses on the intended harm to third parties, not the actual harm, demonstrates the vulnerability of the State's argument . . . . It may not be so easy to identify all those to whom a defendant intended harm, or those whose presence is a reasonable possibility.

[Id. at 945.]

The court reasoned that the State had other "ways to seek additional punishment" for persons who start fires intending to harm multiple victims. Ibid. "Furthermore, should an arsonist cause actual harm or death, substantive charges based on that harm are available." Ibid. The court noted that Handy had been charged and convicted of attempted murder, in addition to arson. Ibid.

As in Handy, Craig, and Lewis, in this case, the State could have charged defendant with one count of arson and multiple counts of attempted murder. However, the State instead improperly multiplied the one act of arson into an indictment charging twelve counts of arson, and defendant was improperly convicted of eleven counts of arson instead of only one count. As a result, we reverse all but one of the arson counts, and we vacate the sentences imposed as to those reversed convictions. We affirm defendant's conviction of one count of second-degree arson.

27

Most of defendant's sentencing arguments are rendered moot by our opinion reversing the multiple arson convictions. However, we briefly address the remaining sentences. We find nothing excessive or otherwise erroneous in the twenty-year NERA sentence imposed for the arson conviction. Due to his prior criminal record, defendant was eligible for an extended term sentence for the second-degree arson conviction. In imposing that sentence, the trial court properly considered, as aggravating factors, the number of victims, their vulnerability, and the heinous nature of the crime. See N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense); N.J.S.A. 2C:44-1(a)(2) (gravity and seriousness of harm). The crime was particularly heinous because many of the inhabitants were elderly or disabled, and defendant knew of their vulnerable condition. Moreover, defendant set the fire in a manner calculated to trap K.G. in her apartment and cause her death. We affirm the twenty-year NERA sentence for the second-degree arson conviction.

After reviewing the sentencing transcript, we find that the trial court gave an adequate statement of reasons for imposing a consecutive five-year term for the terroristic threats conviction. See State v. Yarbough, 100 N.J. 627, 643-45 (1985). We find nothing conscience-shocking or otherwise excessive in the

aggregate sentence of twenty-five years in prison. <u>See</u> <u>State v. Miller</u>, 205 N.J. 109, 128 (2011); <u>State v. Roth</u>, 95 N.J. 334, 364-65 (1984). As previously noted, we remand to the trial court for the limited purpose of entering an amended judgment of conviction.

Affirmed in part, reversed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION