**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2741-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN L. WHITE, JR.,

     Defendant-Appellant.

_____

> Submitted September 16, 2020 – Decided September 25, 2020
>
> Before Judges Vernoia and Enright.
>
> On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 18-09-1602.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Morgan Birck, Assistant Deputy Public Defender, of counsel and on the briefs).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Kevin L. White, Jr. was convicted of second-degree burglary, N.J.S.A. 2C:18-2(b)(1) (counts one and two); third-degree terroristic threats, N.J.S.A. 2C:12-3(a) (count three); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(2) (count four); and second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2(a)(1) (count five). The sentencing judge merged counts three and four with count two, merged count five with count one and sentenced defendant to concurrent nine-year prison terms on counts one and two, subject to an eighty-five percent parole ineligibility period under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On appeal, defendant challenges his conviction and sentence. We affirm his conviction on all counts, except count two. Additionally, we remand to permit the trial court to amend the judgment of conviction to reflect a single burglary conviction and to resentence defendant on counts three and four, based on our reversal of count two.

We briefly summarize the facts. At approximately 1:45 a.m. on November 20, 2016, defendant and an accomplice broke into the home of defendant's neighbor, L.C.[1] L.C. was in her bedroom with her two-year-old son, while an overnight guest occupied a separate bedroom with her two children.

---

[1] We refer to the victim by her initials to protect her privacy.

A-2741-18T3

L.C. immediately recognized the intruder as her neighbor, and initially thought he mistakenly wandered into her home. As she was startled to see defendant, she screamed. Defendant lunged at L.C., climbed on top of her and put his hand over her mouth. He was inches from her face when he told her to "shut the fuck up." L.C. pleaded with her attacker, "[d]on't hurt my baby," to which he responded, "I'll kill that baby."

A physical struggle ensued, and defendant dragged L.C. down a hallway toward the guestroom. L.C.'s friend came out of her room and when she saw defendant's accomplice, they, too became involved in a physical fight. Both women eventually freed themselves from their attackers and barricaded their doors. L.C. immediately called 9-1-1 and then called out to her father, who was in her garage, to get his gun. L.C.'s father saw two suspects running away and yelled "Kevin, stop," when he recognized defendant. L.C.'s father saw defendant and his accomplice drive away in a green Hyundai. L.C. confirmed no property was taken from her home, but she and her friend sustained physical injuries during the incident.

When the police arrived to investigate the incident, L.C. and her father told them they suspected defendant was one of the intruders. L.C. told Sergeant Scott Pollack that her attacker "looked like her neighbor from across the street

that drives a green car," and described him as a 300-pound black male. Although L.C. did not know defendant's name at the time, she had seen him about once a week after moving into her home in 2015.

The police conducted a canine sniff of an area outside defendant's home, but the dog did not alert to that area. Subsequently, the police obtained security camera footage from L.C.'s neighbor which showed a green Hyundai pull up to defendant's residence around the time L.C. called the police.

At trial, defendant testified that he was at a barbeque on the night of the incident. Although he claimed L.C. mistakenly identified him, the jury convicted him on all charges.

On appeal, defendant raises the following arguments:

> POINT I
>
> > A NEW TRIAL SHOULD BE GRANTED BECAUSE THE BURGLARY INSTRUCTIONS FAILED TO SPECIFY THE UNLAWFUL ACT ALLEGEDLY INTENDED UPON ENTERING THE RESIDENCE, EVEN THOUGH THE EVIDENCE WAS AMBIGUOUS AS TO THE PERPETRATORS' INTENT, DENYING DEFENDANT A FAIR TRIAL AND DUE PROCESS. U.S. CONST., AMENDS. VI, XIV; N.J. CONST., ART. I, ¶ 1.

POINT II

DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS BY MULTIPLE INSTANCES OF PROSECUTORIAL MISCONDUCT. U.S. CONST., AMEND. XIV; N.J. CONST., ART. I, ¶ 1.

A. During the cross-examination of a defense witness, the prosecutor implied, without evidence, that the police dog focused on [defendant's] scent on the front porch of [ ] Jackson Avenue.

B. In summation, the prosecutor, in direct contradiction of Henderson[2] and currently accepted science, and without any evidence, argued that stress made the critical eyewitness "hyper-focused" and that her identification was thus more reliable.

C. The cumulative impact of these errors was especially harmful in a case that hinged on eyewitness identification.

POINT III

BECAUSE THE DEFENDANT'S TWO CONVICTIONS FOR BURGLARY – WHEN THERE WAS ONLY ONE ENTRY – WERE IMPROPERLY MULTIPLICITOUS, ONE OF THE CONVICTIONS MUST BE DISMISSED. U.S. CONST., AMEND. XIV; N.J. CONST., ART. I, ¶ 1.

---

[2] State v. Henderson, 208 N.J. 208 (2011).

POINT IV

THE SENTENCE OF NINE YEARS WITH AN [EIGHTY-FIVE PERCENT] PAROLE DISQUALIFICATION IS EXCESSIVE.

Regarding Point I, we engage in a harmless error analysis because defendant objected to the adequacy of the jury charge during the charge conference. State v. Baum, 224 N.J. 147, 159 (2016); R. 2:10-2. Under this standard, we look for "'some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" State v. Lazo, 209 N.J. 9, 26 (2012) (quoting State v. R.B., 183 N.J. 308, 330 (2005)).

"Accurate and understandable jury instructions in criminal cases are essential to a defendant's right to a fair trial." State v. Bielkiewicz, 267 N.J. Super. 520, 527 (App. Div. 1993) (quoting State v. Concepcion, 111 N.J. 373, 379 (1988)). So important is this principle, that "a trial court's failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel." Id. at 527 (citing State v. Federico, 103 N.J. 169, 176 (1986)).

A-2741-18T3

A person is guilty of burglary if, with purpose to commit an offense therein, that person enters a structure without license or privilege to do so. N.J.S.A. 2C:18-2(a)(1). Burglary is a crime of the second degree if in the course of committing the offense, the actor purposely, knowingly, or recklessly inflicted, attempted to inflict, or threatened to inflict bodily injury on anyone. N.J.S.A. 2C:18-2(b)(1).

Here, although the trial judge declined defendant's request for the jury to be instructed on the specific offense he intended to commit when entering L.C.'s home, the judge's instructions encompassed the elements of burglary, and directly tracked the Model Jury Charge, making his instructions presumptively proper. State v. Whitaker, 402 N.J. Super. 495, 514 (App. Div. 2008); see also Model Jury Charges (Criminal), "Burglary in the Second Degree (N.J.S.A. 2C:18-2(b))" (rev. Mar. 14, 2016). Moreover, footnote five of the Model Jury Charge for second-degree burglary confirms that

> where the circumstances surrounding the unlawful entry do not give rise to any ambiguity or uncertainty as to a defendant's purpose in entering a structure without privilege to do so [and lead] inevitably and reasonably to the conclusion that some unlawful act is intended to be committed inside the structure, then specific instructions delineating the precise unlawful acts intended are unnecessary.

[Model Jury Charges (Criminal), "Burglary in the Second Degree" at n. 5 (quoting State v. Robinson, 289 N.J. Super. 447, 458 (App. Div. 1996)).]

We are persuaded that defendant's statements and behavior toward his victims, in the early morning hours of November 20, 2016, evinced a clear intent to commit some unlawful act once he gained entry to L.C.'s home. Moreover, the State did not need to prove that the offense defendant intended to commit actually occurred. Robinson, 289 N.J. Super. at 453. Accordingly, we are satisfied the judge committed no error when he declined to instruct the jury on the specific offense defendant intended to commit.

Next, defendant argues, for the first time on appeal, that certain acts of prosecutorial misconduct deprived him of due process. Because defendant did not raise this claim at trial, we analyze this argument under the plain error standard.

"[T]he primary duty of a prosecutor is not to obtain convictions but to see that justice is done." State v. Smith, 212 N.J. 365, 402 (2012). A prosecutor must use every legitimate means to bring about a just conviction, but refrain from improper methods calculated to produce a wrongful one. Id. at 403. We will find plain error if a prosecutor's questions and comments were "clearly capable of producing an unjust result." R. 2:10-2.

Prosecutorial misconduct is not a ground for reversal unless the prosecutorial remarks were "so egregious that [they] deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999). Further, a prosecutor's remarks may be harmless if they are only a response to remarks made by defense counsel. State v. DiPaglia, 64 N.J. 288, 297 (1974).

Prosecutors are "expected to make vigorous and forceful closing arguments to juries." Frost, 158 N.J. at 82. They "are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." Ibid. Still, a prosecutor's summation "is limited to commenting upon the evidence and the reasonable inferences to be drawn therefrom." State v. Swint, 328 N.J. Super. 236, 261 (App. Div. 2000). "Although prosecutors may suggest legitimate inferences from the record, they may not go beyond the facts before the jury." State v. Roach, 146 N.J. 208, 219 (1996). Guided by these principles, we review the prosecutor's challenged comments "within the context of the trial as a whole." State v. Feaster, 156 N.J. 1, 64 (1998).

Defendant claims the prosecutor improperly questioned the mother of his girlfriend about the canine sniff by asking if the dog tracked to the same area where he would smoke outside on his porch. Defendant contends the

prosecutor's cross-examination of this witness implied the dog tracked his scent to the porch, even though that inference was not supported by the evidence. In sum, defendant asserts that without any foundation, the State led the jury to mistakenly believe it had some evidence against him related to the dog tracking.

Defendant also cites to State v. Parton, 251 N.J. Super. 230 (App. Div. 1991), to argue the prosecutor ignored the fundamental prerequisites to the admission of testimony regarding dog tracking, namely:

> 1. The dog's handler must have sufficient knowledge, skill, training or experience to evaluate the dog's actions.
>
> 2. Once qualified as an expert, the handler must give testimony about the particular dog used and that the dog
>
> a. is of a stock characterized by acute scent and power of discrimination and that this particular dog possessed those qualities;
>
> b. was trained and tested and proved to be reliable in the tracking of human beings;
>
> c. was laid on a trail where circumstances tended to show that the suspect has been, or a track which circumstances indicated was made by the suspect; and
>
> d. followed the scent or track to or towards the suspect's location and that the dog was properly handled during tracking.

3. After this foundation has been laid, the handler may testify as to what the dog did during the tracking and give his interpretation and opinion of the dog's actions.

[Parton, 251 N.J. Super. at 233-34 (citing State v. Wanczyk, 196 N.J. Super. 397, 403-04 (Law Div. 1984)).]

We agree that before admitting a K-9 officer's testimony, a judge must adhere to the Parton framework and ascertain if the officer's testimony qualifies for admission as expert testimony. Here, however, the K-9 officer was not called as a witness. Instead, defense counsel first asked Sergeant Pollack about the results of the canine sniff, even though this officer was not the dog's handler. Sergeant Pollack readily admitted "nothing came" of the dog tracking and that he did not know if the canine was taken to defendant's home. On redirect, the State did not question Sergeant Pollack about the canine sniff.

When defense counsel elicited additional testimony about the dog's trajectory from the mother of defendant's girlfriend, the prosecutor briefly cross-examined her about where the dog tracked. But on redirect, this witness confirmed the dog did not alert to the area where defendant had been and instead, "was just walking like everything was fine." Ultimately, no witness testified the dog alerted police during the canine sniff. Further, contrary to defendant's

A-2741-18T3

claim, the prosecutor did not suggest he had superior knowledge of a positive indication.

At the close of the case, the judge instructed the jury:

> The mere fact that an attorney asks a question and inserts facts or comments or opinions in that question in no way proves the existence of those facts. You will only consider such facts which, in your judgment, have been proven by the testimony of witnesses or from exhibits admitted into evidence.

We presume jurors abide by a judge's instructions. State v. Miller, 205 N.J. 109, 126 (2011). Accordingly, based on the entirety of the record before us, and mindful of our standard of review, we are satisfied the State's limited cross-examination regarding the canine sniff did not amount to plain error.

Defendant next argues for the first time on appeal that he was deprived of due process because of comments the prosecutor made in his summation. In particular, he claims the prosecutor impermissibly bolstered the reliability of L.C.'s identification of defendant as her attacker by stating she was "hyper-focused" during the incident. Defendant also contends the prosecutor's closing remarks, coupled with his cross-examination regarding the canine sniff, had a "cumulative impact" on his trial that was unduly prejudicial. We are not persuaded.

Initially, we observe that in defense counsel's closing remarks, she characterized L.C.'s testimony as "not credible" and labeled L.C.'s identification of defendant as "shaky." Defense counsel also questioned the reliability of L.C.'s identification given the "stress of the situation, . . . the duration of the encounter, less than two minutes, . . . and the lighting, the dark room." In response, the prosecutor outlined several reasons L.C.'s identification of the defendant was reliable, including the fact she knew defendant because he was her neighbor, she was "face-to-face" during her encounter with defendant, and his threat to kill her son made her "hyper-focused." The State argues these comments were appropriate. But it also concedes the prosecutor mistakenly told jurors L.C. was not "stressed," even though she answered affirmatively when asked under cross-examination, "[t]his was stressful, correct?"

Notably, during their closing arguments, both attorneys advised jurors to consider the judge's forthcoming instructions regarding identification testimony. As anticipated, when summations ended, the judge properly instructed jurors that "[a]rguments, statements, remarks . . . and summations of counsel are not evidence and must not be treated as evidence." The judge also instructed jurors to evaluate the reliability of L.C.'s identification by considering her level of stress, the duration of the incident, the distance between L.C. and her attacker,

and the lighting during the attack. Given that L.C. and defendant were not of the same race, the judge also advised the jury that research demonstrated "people may have greater difficulty in accurately identifying members of a different race."

Once again, we consider defendant's argument about the prosecutor's summation under the plain error standard. Confident that the jurors followed the judge's instructions, since there are no proofs to the contrary, we are satisfied the prosecutor's closing remarks do not constitute plain error. Moreover, we are not convinced the prosecutor's closing remarks "stray[ed] over the line of permissible commentary." State v. McNeil-Thomas, 238 N.J. 256, 275 (2019).

Considering our conclusions, it follows that we are not persuaded the State's alleged errors cumulatively deprived defendant of a fair trial. Additionally, the record reflects there was significant evidence of defendant's culpability which was not tied to either the fruitless canine sniff or the challenged remarks of the prosecutor. Accordingly, we perceive no basis to reverse defendant's conviction.

We need not discuss defendant's Point III in detail as the State concedes, and we conclude, defendant should have only been convicted of one count of burglary.

Multiplicity is the improper charging of "multiple counts of the same crime, when defendant's alleged conduct would only support a conviction for one count of that crime." State v. Hill-White, 456 N.J. Super. 1, 11 (App. Div. 2018). The remedy for multiplicity after conviction is "setting aside all but one of the multiple convictions after the verdict." Id. at 12.

As we already stated, burglary is a second-degree crime if while committing the offense, the actor "purposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone." N.J.S.A. 2C:18-2(b)(1). "However, that does not mean that one burglary can be charged as multiple burglaries if the actor harms or menaces multiple people in the course of committing the burglary." Hill-White, 456 N.J. Super. at 18. As defendant was charged with two counts of second-degree burglary based on injuries he inflicted on L.C. and the threat to her son, we reverse the conviction for burglary on count two. We also vacate the sentence imposed on that count. Additionally, we remand for the limited purpose of amending the judgment of conviction to reflect a single burglary conviction and to permit the trial court to resentence defendant on counts three and four, which were previously merged with count two. "'Convictions merged for the purpose of sentencing are not extinguished' and may be unmerged if the conviction into which they were

A-2741-18T3

merged is reversed." Id. at 11 (quoting State v. Pennington, 273 N.J. Super. 289, 295 (App. Div. 1994)).

Regarding defendant's Point IV, we are not convinced that defendant's sentence on count one, namely, a nine-year prison term, subject to NERA, is excessive. Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors." State v. Case, 220 N.J. 49, 64 (2014). Further they must "explain how they arrived at a particular sentence." Id. at 65 (citing State v. Fuentes, 217 N.J. 57, 74 (2014)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Ibid.; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

Here, the judge considered defendant's criminal record, a presentence report, character letters submitted for defendant's benefit and L.C.'s victim-impact statement. The judge also identified the relevant aggravating and mitigating factors set forth in N.J.S.A. 2C:44-1(a) and (b). We are satisfied the judge's findings of fact concerning aggravating and non-existent mitigating factors were based on competent and reasonably credible evidence in the record

16

and that he applied the correct sentencing guidelines enunciated in the Code. Accordingly, we discern no basis to second-guess the sentence on count one.

Affirmed in part; reversed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2741-18T3